## S. R. THOMPSON *v.* PRESTON & STAUFFER ET AL.

1. ASSIGNMENT FOR CREDITORS. *Partial assignment. Validity of same.*

   Where an assignment has been treated by the court below as a partial assignment, at the instance of a complainant who alleged in his bill that the instrument was of that character, it will not, at his instance, be treated as a general assignment on appeal, and avoided on the ground that it did not include all of the grantor's property, although the grantor and his assignee may have endeavored to have had it treated as a general assignment in the court below.

2. SAME. *Previous fraudulent conversion of assets.*

   A partial assignment for creditors is not invalidated by the fact that shortly before its execution the assignor had fraudulently converted a part of his assets into money.

3. SAME. *Books of assignor. Erasure of debit entry.*

   An assignment for creditors that includes the store accounts of the debtor is not invalidated by the fact that a small account standing on his books when the assignment was executed was afterwards erased, or an entry made indicating payment, when the account had been in fact paid before the assignment.

FROM the chancery court of Jackson county.

HON. W. T. HOUSTON, Chancellor.

The firm of Roberts & March, merchants at Scranton, made an assignment for their creditors, with preferences, to S. R. Thompson, assignee, on December 18, 1894. The assignment conveyed the "stock of goods, wares and merchandise now in our store in Scranton, Miss.; also all the notes and accounts due us, a mare, a wagon and a spring cart."

The assignee filed his petition and bond and schedules, as re-
quired by chapter 8 of the code of 1892, and was proceeding to
administer the trust in accordance with the provisions of said
chapter, when appellees, creditors of Roberts & March, filed
their bill attacking the assignment as fraudulent.    The bill al-
leges "that, while said defendants, Roberts & March, and said
S. R. Thompson, are putting forth the pretense that the said
pretended assignment is a general assignment for the benefit of
the creditors of Roberts & March, and are seeking to have the
same recognized and administered as such by this honorable
court, still, as a matter of fact ánd a matter of law, as com-
plainants are advised, it is only a partial assignment, and, as
such, cannot be recognized or administered in this court pur-
suant to the provisions of said statutes governing general as-
signments."    At the February (1895) term of the chancery
court of Jackson county, the complainants demurred to the as-
signee's petition, one of the grounds of demurrer being that the
assignment was a partial assignment, and, as such, could not
be recognized by the court, nor could the assignee be treated as
a receiver of the court, and the court sustained the demurrer
upon this ground, holding that the assignment was a partial as-
signment.

Defendants then answered the bill, denying all fraud, and
averring that the assignment was a general assignment, and,
while it only conveyed the partnership property, that was all
the property owned by them, neither of them owning indi-
vidual property.    The books of the assignors were introduced
in evidence, and the blotter showed an entry made on the day
before the assignment was made, charging Chas. Krebs with
ten sacks of oats, $21.83.    This entry was erased.    There is
nothing in the evidence to show when or by whom this erasure
was made.    The assignors and the assignee all testified that they
did not do it and knew nothing of it, but the evidence shows
that Krebs in fact paid the account before the assignment was
executed.    There was some evidence that Roberts & March

sold some goods for less than cost, and did not account for the money they took in for goods sold and accounts collected for several days previous to the assignment; and Roberts, one of the assignors, was asked what became of the money that was taken in on the day of the assignment and several days previous, and he replied, that they put it in their pockets and "blowed it in," some of it before and some after the assignment.

The court, on final hearing, treated the assignment as a partial one, and valid on its face, but held that the clause conveying the accounts due the assignors conveyed all the accounts on the books that did not appear on the books to be paid at the time of the assignment, whether they were in fact paid or not before the assignment, and that, because the account on the blotter against Krebs was scratched out after the assignment was executed, the assignment was fraudulent and void as to complainants. From this decree defendants appealed.

*H. Bloomfield*, for appellants.

The reasons of the chancellor for setting aside the assignment are not sufficient. The deed transferred "all the accounts due Roberts & March." It is admitted by complainants that the account of Krebs was paid before the assignment was executed. That account, therefore, was not due and could not have been transferred to Thompson. It was only entered on the blotter, and when it was paid some one ran his pencil across it, and doubtless forgot it, but it was done before the assignment was made, because it is not embraced in the list of accounts made out by the assignee.

The evidence is clear that Roberts & March owed B. L. Hamilton the $1,000 for which he was preferred. The allegation in the complainant's bill that Roberts & March attempted to have the assignment recognized and administered as a general assignment, when in fact it is only a partial assignment, does not affect the validity of the assignment.

That part of the assignment which is in the following words: "The assignee shall sell the property assigned, at public or private sale, for cash, in such manner as to realize the largest sum of money from said property, and shall, without delay, proceed to collect, by suit or otherwise, all solvent notes and accounts due us; the assignment is made for the benefit of our creditors, and to realize the largest sums of money practicable from our means," does not give the assignee an undue discretion in administering said assignment. 61 Miss., 463; 62 *Ib.*, 600; 59 *Ib.*, 80, 102, 114; 67 *Ib.*, 704; Burrill on Assignments (6th ed.) pp. 382, 269; Am. & Eng. Enc. L., 876; 60 Miss., 97.

The fact that Roberts & March sold goods on the day of the assignment, in the regular course of business, does not affect the validity of the assignment. The courts have held "that while a deed of assignment for creditors was in course of preparation, and, without the knowledge of the assignee or of the creditors, the assignor sold goods at reduced prices and failed to pay over the proceeds to the assignee, does not avoid the assignment." Digest So. Rep., p. 170, §§ 18, 19, citing 90 Ala., 359. The assignee and the preferred creditor testified that they did not know Roberts & March were selling goods at reduced prices.

The fact that Roberts & March retained a few dollars, realized from the sale of the goods before the assignment was executed, does not invalidate the assignment. *Goodbar* v. *Tatum*, 10 So. Rep., 578. A secret fraudulent intent on the part of the assignor in making a general assignment, unknown to the assignees at the time they accepted the trust, and to the creditors, does not authorize a creditor to set aside the assignment as fraudulent. *Barrette* v. *Pollak Co.*, 18 So. Rep., 615.

*Brame & Alexander*, on the same side.

The assignment is a partial and not a general one. This appears on the face of the instrument, which purports to assign

certain designated assets and nothing more. Besides, appellees are irrevocably committed to that theory because the bill so alleges. The only authority for giving complainants a standing in court was that the assignment was not a general one and did not come within the provisions of chapter 8 of the code of 1892, and it was on that very ground attacked by complainants. Defendants made a mistake of law, and the assignee proceeded with the assignment by giving bond and taking such steps as are required in cases of general assignments by the code chapter, but this was only a mistake of law, and could not affect the real character of the instrument. *Jones* v. *McQuien,* 71 Miss., 98.

Complainants were made parties to the proceedings by the assignee, and demurred to the petition upon the ground that the assignment was not general. Their demurrer was sustained and the proceedings dismissed. These parties are bound by that adjudication, and are estopped to claim that the assignment is a general one. If it had been a general assignment, complainant's remedy would have been by cross petition, under the provisions of the code, and they would have no standing in the court.

The chancellor found against complainants on all questions of fact. All allegations of fraud are denied by the sworn answers of Roberts & March, and there is little or no testimony tending to support the allegation. The finding has the same conclusive effect as the verdict of a jury. *Walker* v. *Walker,* 67 Miss., 529.

The chancellor correctly found in favor of defendants as to the genuineness of the debts preferred. He decided against defendants, and invalidated the assignment because of a little entry on a blotter, in which the assignors, the day before the assignment, had charged one Krebs with ten sacks of oats, $21.85, which entry was erased by some one in the store, it does not appear by whom. The oats were delivered to Krebs the day before the assignment. That is not questioned. A

blotter entry was made, charging him with the oats, but, as it was a cash transaction, no entry was made except on the blotter. Krebs paid the money before the assignment; nothing further was done about it. The assignment was afterward executed, and an inventory of the goods and a list of the claims assigned were made out. The list did not include the account against Krebs. On the trial the entry was found erased in pencil. Against the law and against the facts, the chancellor presumed that the erasure had not been made until after the execution of the assignment. Having assumed this, he held that the failure to erase the charge prior to the execution of the assignment, was a retention of something which the assignment purported to convey. There is no evidence that there was any alteration of the books or accounts after the assignment was executed. The presumption of honesty, and the presumption of the validity of the assignment, entitled defendants to a presumption that the erasure was made prior to the assignment. There was no allegation or intimation in the bill in regard to this entry.

The assignment does not purport to convey, and the assignors did not pretend to assign, any account against Krebs. It seems to us folly to argue that the language of the assignment would be considered as transferring accounts on a merchant's book which had long since been paid, though the merchant had failed to credit the account with proper payments; such a doctrine would invalidate an assignment if a merchant, having hundreds of accounts, should fail to give proper credits in every case. The reason why a general assignment of all the assignor's property is invalidated when it is proved that he has made a reservation, is that he reserved property which he purports to convey, and this operates to hinder, delay and defraud creditors. It is impossible to apply that doctrine in this case. It is out of the question to say that any creditor was hindered or delayed by an assignment expressly conveying this account as an existing claim; the debtor would only assign a piece of waste

paper, and nobody could be prejudiced.   Steering away from
the point as to the account for the oats, counsel seek to main-
tain the decree on other and distinct grounds.   In doing this
they are confronted by the decree of the chancellor, which is
final and conclusive on all matters of fact.

It is contended that Roberts & March collected a little money,
which they failed to turn over to the assignee.   Granting this
to be true, the assignment is not affected, because it does not
purport to pass any money.   *Jones* v. *McQuien,* 71 Miss., 98.
It is urged by counsel that the grantors had money which
they fraudulently withheld from creditors, claiming that this
will invalidate the assignment.   They did not pretend to assign
anything except the property particularly described in the as-
signment.   If they were guilty of any fraudulent conduct out-
side of this, it is not pretended that either the assignee or the
preferred creditors had any knowledge or notice of it, or par-
ticipated in it.   Hamilton and the bank, with honest debts, had
a perfect right to collect or secure the same, regardless of the
fact that the debtors were insolvent, and although they may
have intended to defraud other creditors.   *Hirsch* v. *Richard-
son,* 65 Miss., 227.

The assignment is a special one, and the consideration is not
seriously assailed.   In no possible view can the assignee be af-
fected by any unlawful or fraudulent conduct of the grantors
with which he is not shown to have any connection.   *Marks* v.
*Bradley,* 69 Miss., 1, and *Montgomery* v. *Goodbar, Ib.,* 333,
cited by opposite counsel, can have no application, because in
each of those cases a general voluntary assignment was in-
volved, and there was admittedly a retention of property which
the assignor expressly purported to convey.   There is a vast
and wide distinction between such an instrument and a partial
special assignment based upon a consideration.   *Jones* v. *Mc-
Quien,* 71 Miss., 98.   It is hardly necessary to argue the ques-
tion as to the validity of the assignment on its face.   It recites
that the assigned effects are surrendered "for the benefit of

creditors," and then recites that the assignee shall sell the prop-
erty, and " without delay proceed to collect, by suit or other-
wise, all of the solvent notes and accounts due us," and that
the assignment is " made for the benefit of our creditors and to
realize the largest sums of money practicable from our said
means and assets." It would be a very strained construction
to hold that this gave any unlawful or improper direction as to
the insolvent claims. The rule is, *ut res magis valeat quam
pereat.* It is not necessary that the assignment shall give any di-
rection as to the manner of dealing with either solvent or insol-
vent claims. If they are conveyed to the assignee for the ben-
efit of creditors, without any direction as to their collection or
disposition, it is sufficient. 1 Am. & Eng. Enc. L., pp. 865,
876, and notes; Burrill on Assignments, § 104. The parties
can always appeal to the chancery courts in case of abuse of
power by the assignee. *Anderson* v. *Lachs,* 59 Miss., 111.

The discretion given the assignee here is not so great as that
given to the assignee in the assignment which was sustained in
*Armitage* v. *Ratliff,* 62 Miss., 600, nor in that sustained in
*Richardson* v. *Marqueze,* 59 Miss., 80.

In the case of *Richardson* v. *Stapleton,* 60 Miss., 91, relied
on by opposite counsel, there was an express limitation on the
power of the assignee which was detrimental to creditors. There
is no restriction or limitation here on the discretion of the as-
signee.

*Ford & Ford,* for the appellees.

The assignment, though partial on its face, was dealt with
by the assignee as a general assignment, and all the defendants
in their answers aver that it was a general assignment, and did
all in their power to have it considered as such. Whether the
assignment be general or partial, the allegation in complainants'
bill that appellants withheld from the assignment assets for the
purpose of converting them to their own use and defrauding

their creditors, has been established by the evidence, and the chancellor was right in holding it void.

The reason assigned by the chancellor was that one account on the books, which was assigned, was collected by Roberts & March, either after the assignment or about the time it was executed, and was put in their pockets, and the assignment did not operate upon what it professed to, and was void, under authority of the cases of *Marks* v. *Bradley*, 69 Miss., 1, and *Montgomery* v. *Goodbar*, 69 Miss., 336. This account did have some pencil marks upon it that might have been presumed to have been intended to cancel it, but defendants, the only parties who had access to the books, swear they did not erase it, so the court is bound to hold that an account, which they turned over to the assignee, was collected and the money used for their individual purposes. They did, in this transaction, what the record shows they were doing all along—getting everything they could into money, and putting it into their pockets, out of the reach of creditors, and assigning the balance to pay an extremely fishy debt. Not only did they put the money they collected on the Krebs account out of the reach of creditors, but the record shows that, for several days before the assignment, they took in, according to their own testimony, from $25 to $40 per day in cash; that they did not, during this time, pay a single debt, and what they did not use for personal expenses, in their own language, they "blowed in" and put in their pockets.

There was proof of twenty-six dollars they collected the day of the assignment—probably after it was made—which they were forced to admit they "blowed in," and a cash collection of thirty-five dollars, entered on the books that same day, was disposed of the same way. It is manifest these parties were for days getting in all the cash they could, putting it in their pockets and holding it there out of the reach of their creditors and then assigning the only visible property, as a part of a common scheme. A failing creditor has no more right to

retain money which cannot be reached by creditors in making a partial assignment than when he makes a general one. Neither of the parties were married or entitled to one dollar as an exemption.

The correct rule on this subject was announced by the high court of errors and appeals in the case of *Ingraham* v. *Grigg*, 13 Smed. & M., p. 22. In this case the court says a failing creditor may devote a part of his property to the payment of his debts, provided he leaves the remainder open to the creditors for the payment of debts. The test is, does the remainder of the property remain open to the rights of creditors to subject to the payment of debts? We submit that, where, as in this case, the debtor converts all the property he can into money and puts it into his pockets—out of reach of legal process—and then makes an assignment of all visible property, that it is all part of a common scheme to defraud his creditors. There is nothing in *Jones* v. *McQuien*, 71 Miss., 101, in conflict with this view. In that case there was no placing the property out of creditor's reach. In this case, converting property into money and putting it into his pockets, absolutely placed it beyond the creditor's reach.

We further contend that the deed of assignment is void on its face, in that it vests in the assignee an illegal discretion, the necessary consequence of which is to hinder, delay and defraud creditors in this: The deed recites that "he shall, without delay, proceed to collect by suit all the solvent notes and accounts due us." Pretend to convey all the accounts, but enjoined no duty or diligence upon him as to any claim except those which he may be constrained to consider as solvent. It cannot be contended that the words "solvent" and "collectible" are convertible terms, and that he was to collect all collectible accounts.

In the case of *Richardson* v. *Stapleton*, 60 Miss., 97, and *Wickham* v. *Pendleton*, 61 Miss., 463, the court says: "It must be borne in mind that the trustee in a deed of assignment

takes the property impressed with all the limitations appearing upon its face." Now, this assignee, not being guided by the chancellor, was left to follow the directions of this instrument under which he claimed, and, following its directions, he could consider all the notes and accounts insolvent and let the whole sum represented by them, amounting, in this case, to fifty per cent. of the assigned property, be utterly lost to the creditors. We submit that any such power given in a deed of assignment is dangerous, and the necessary effect of such a clause is to defraud creditors.

This assignee can stand upon the terms of the assignment and refuse to attempt, even, to collect these claims, and, as the title is in him, the creditors are powerless to sue, and yet he can defend his action, however negligent, by merely saying they are insolvent.

Argued orally by *L. Brame*, for the appellant.

COOPER, C. J., delivered the opinion of the court.

In view of the course pursued by the appellees, and of the averments of their bill that the assignment attacked was a partial and not a general one, we are of opinion that the court below properly dealt with it as such, and that it ought not to be avoided on the ground that it failed to assign the whole estate of the assignors.

Considered as a partial assignment, we are unable to concur in the conclusion reached by the chancellor, either for the reason given by him or for those advanced by counsel for appellees, who seeks to uphold the decree, not upon the ground upon which it is rested by the chancellor, but on other principles, and on grounds repudiated by him. The chancellor was of opinion that the assignment should stand, but for the fact that a small account standing on the books, as is supposed when the assignment was executed, was afterwards erased from the books, or an entry made showing its payment. It is not disputed that, as a matter of fact, the account had been paid before the as-

signment was made, nor does it certainly appear that the books were changed by the assignors or under their direction.    We are unable to perceive how any harm to any person could result from the entry of payment of an account which had in fact been paid.    Such an entry discharged no debt and changed no right; it amounted to nothing.

Considering the assignment as a partial one, its validity is not impaired by the fact that before its execution the assignors were engaged in fraudulently converting a part of their estate into money, to prevent the same from being subjected by their creditors.    That they did this, did not prevent them from making a lawful disposition of what remained.

*The decree is reversed and bill dismissed.*